**WELLINGTON COMPUTER GRAPHICS, INC., Plaintiff,**

v.

**Milton MODELL, Stanley Modell, Eugene Modell, Milton Siegel and Philip Cohen, Defendants.**

**No. 70 Civ. 219.**

United States District Court, S. D. New York.

June 30, 1970.

---

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for plaintiff; Edward N. Costikyan, and Stephen Gillers, New York City, of counsel.

Herzfeld & Rubin, New York City, and Crummy & O'Neill, Newark, N. J., for defendants; Herbert Rubin, New York City, and Peter J. Carton, Newark, N. J., of counsel.

## OPINION

MacMAHON, District Judge.

Defendants move for a stay of this action or, in the alternative, to transfer this action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).

The action is based on defendants' alleged violations of Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 of the Securities and Exchange Commission, and Section 12(2) of the Securities Act of 1933.

Defendants, here, previously commenced an action against plaintiff in the New Jersey state courts charging fraud, breach of warranty, breach of contract, and conversion. Both actions arise out of the merger of plaintiff with Cosmo Book Distributing Co., Inc. (Cosmo).

Defendants are shareholders of Cosmo and in the state action claim that plaintiff and its president, Cary Wellington, refused to pay defendants for Cosmo shares purchased from defendants, refused to supply defendants with agreed upon employment contracts, and refused to return Cosmo shares which plaintiff had agreed to return if not sold. There, plaintiff counterclaimed and charged, among other things, that defendants induced plaintiff to purchase the Cosmo shares by fraudulent misrepresentations concerning Cosmo's financial condition. Here, that claim is transformed to an allegation that defendants violated the federal securities laws by supplying

plaintiff with misleading information concerning Cosmo's financial condition.

 Defendants contend that determination of plaintiff's counterclaim in the New Jersey action will fully dispose of plaintiff's claim for relief here.

Defendants rely on two cases where a federal court stayed a shareholder's derivative action pending determination of a derivative action brought by other shareholders against the same defendant and involving the same factual issues.[1] Those cases involved claims for relief based on alleged violation of the same state-created right which different sets of plaintiffs were seeking to adjudicate by use of the exact same remedy; a shareholder's derivative action.[2]

Here, however, although both the state and federal actions concern essentially the same transactions, the legal rights are different.

The counterclaim for common law fraud is founded on state law, while the claim of violation of the federal securities law is created by federal statutes. These two claims, unlike derivative actions where diversity of citizenship is present, are not cognizable either in a state or federal court. Plaintiff's claim *for violation of Section 10(b) and Rule* 10(b)–5 is cognizable solely in a federal court.[3]

*Moreover, the elements necessary to* establish common law fraud differ from those essential to prove a violation of the federal securities law.[4] Proof of a specific intent to defraud or scienter is an essential element of common law fraud, but scienter is not essential to establish a violation of Section 10(b) and Rule 10b–5 where it is sufficient merely to show "lack of diligence, constructive fraud, or unreasonable or negligent conduct."[5]

Defendants, in support of their argument that the determination of the New Jersey action will dispose of all the issues raised here, rely on cases where the state action had reached the judgment stage and which, therefore, served as a basis for barring the federal action on familiar principles of res judicata or collateral estoppel.[6]

Since the New Jersey court lacks subject matter jurisdiction over plaintiff's claim under Section 10(b) and Rule 10b–5, a final judgment there could not have res judicata effect here.[7] At most, final judgment there would collaterally estop relitigation here of issues common to both actions.[8]

1. See Mottolese v. Kaufman, 176 F.2d 301 (2d Cir. 1949); Rosenfeld v. Schwitzer Corp., 251 F.Supp. 758 (S.D.N.Y.1966).

2. Cases involving the grant of a stay in a derivative action raise the "unique" problem of an endless multiplicity of suits and, therefore, can be considered *sui generis*. See Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir. 1961); Rosenfeld v. Schwitzer Corp., *supra*, 251 F.Supp. at 763.

3. Abramson v. Pennwood Investment Corp., 392 F.2d 759, 762 (2d Cir. 1968).

4. See Kohler v. Kohler Co., 319 F.2d 634, 637 (7th Cir. 1963); Securities & Exchange Comm'n v. American Beryllium & Oil Corp., 303 F.Supp. 912, 918–919 (S.D.N.Y.1969); Kahan v. Rosenstiel, 285 F.Supp. 61, 62–63 (D.Del.1968); Bromberg, Securities Law, p. 235 (1967).

5. Securities & Exchange Comm'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 854–855 (2d Cir. 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). See also Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); Kohler v. Kohler Co., *supra*, 319 F.2d at 637; Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961).

6. See Boothe v. Baker Industries, Inc., 262 F.Supp. 168 (D.Del.1966); Dembitzer v. First Republic Corp. of America, CCH Fed.Sec.L.Rep. ¶ 91,566 (S.D.N.Y.1965); Connelly v. Balkwill, 174 F.Supp. 49 (N.D.Ohio 1959), aff'd, 279 F.2d 685 (6th Cir. 1960); Kaufman v. Shoenberg, 154 F.Supp. 64 (D.Del.1954).

7. See Moran v. Paine, Webber, Jackson & Curtis, 279 F.Supp. 573, 579 (W.D.Pa. 1967), aff'd, 389 F.2d 242 (3d Cir. 1968); *cf.*, Abramson v. Pennwood Investment Corp., *supra*, 392 F.2d at 762.

8. See Lyons v. Westinghouse Elec. Corp., 222 F.2d 184, 188 (2d Cir.), cert. denied sub nom. Walsh v. Lyons, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955).

Collateral estoppel, however, only bars relitigation of common issues which are *actually* adjudicated in the first action. It does not bar relitigation of issues which could have been raised but were not.[9] Obviously, we cannot, at this stage of the New Jersey action, determine which of the common issues will actually be litigated there. The estoppel effect of the New Jersey action on this federal action is thus presently unknown and unknowable. The cases involving collateral estoppel are therefore inapplicable.

Defendants also contend that a New Jersey statute protects the same rights as Section 10(b) of the federal securities law and that plaintiff, by counterclaiming under that statute, could fully adjudicate its federal claim in the state court.[10]

Defendants do not, however, demonstrate that this state statute is construed by the New Jersey courts so as to protect the same rights and grant the same remedies as those afforded by the federal statutes. Even assuming that the underlying factual issues would be the same under either the state or federal statutes, it would appear that plaintiff would be deprived of a jury trial as of right, assured under federal law, since the New Jersey action is in a court of equity.

More significantly, the existence of a state remedy, even if it be coextensive with a federal remedy—here an exclusive federal remedy—does not, and should not, be used to deprive a party of a federally created right to sue in a federal court.

Basically, defendants raise the question of whether this is a proper case for a federal court to abstain from exercising its federal question jurisdiction. The doctrine of abstention of necessity is severely limited to situations where the concerns of federal-state relations, stemming from the root principle of federalism underlying our governmental structure, outweigh the judiciary's constitutional and congressional mandate to decide cases within its jurisdiction. If this limitation is not conscientiously maintained, abstention can operate to deny a litigant a federal forum where that right has been granted by congress.

The abstention doctrine has been invoked, most often, to avoid decision of a question of federal constitutional law when the question presented can be decided on questions of state law and to avoid undue interference with a state's administration of its own affairs, such as its administration of highways, its system of taxation,[11] or with a proceeding such as eminent domain which is "intimately involved with sovereign prerogative."[12]

This case raises no such ground for abstention. Nor is this a case where the rights and duties of the parties are created by state law, as in diversity cases, so that the unsettled posture of state law becomes material.[13] Rather, this is simply a case involving routine application and determination of rights specifically created and protected by congressional legislation and committed to the exclusive jurisdiction of the federal courts.

Moreover, defendants do not establish that the burdens imposed on them by denial of their motion for a stay so clearly outweigh the burdens a stay will impose on plaintiff that equity dictates denying

9. See 1B J. Moore, Federal Practice ¶ 0.405–[1] (2d ed. 1965).

10. See New Jersey Statutes Annotated 49 :3–47 et seq.

11. See Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959) ; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) ; Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

12. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

13. See C. Wright, Federal Courts § 52, at 173, 175 (1963) ; *compare* Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), with County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), and Louisiana Power & Light Co. v. City of Thibodaux, *supra*, 360 U.S. 25, 79 S.Ct. 1070.

plaintiff the federal forum granted by statute.

Plaintiff has agreed to using the same deposition in both the state and federal action. If the issues in both are as similar as defendants claim, preparation of the defense to the federal claim will involve no burdens beyond those required for preparation of the defense to the state counterclaim.

Abstention under these circumstances would be abdication of our responsibility to hear cases arising under federal law.

Defendants' motion for a stay is, therefore, denied.

 Defendants alternatively move for a transfer of this action to the United States District Court for the District of New Jersey.

The burden of establishing the necessity for a transfer is on defendants, since plaintiff's choice of a proper forum should normally be respected. Defendants, therefore, must demonstrate that the transferee district is a district where the action could have been brought and that the balance of convenience to parties and witnesses tips substantially in favor of the transferee district.[14]

There is no claim that this action could not have been brought in New Jersey. The controversy turns on the degree to which the parties and witnesses will be inconvenienced by having to appear in the Southern District of New York.

Defendants are all residents of New Jersey and, in fact, plaintiff has its principal place of business in East Rutherford, New Jersey. Defendants claim that the relevant accounting and inventory records of Cosmo are all located in New Jersey.

In effect defendants are claiming that being forced to appear in New York City rather than Newark, New Jersey—cities twelve miles apart—so substantially inconveniences them that plaintiff should be deprived of its choice of forum. The contention is frivolous.[15]

Moreover, defendants do not particularize the number of allegedly inconvenienced witnesses, the extent of their inconvenience, their names and addresses, or the proposed substance of their testimony.[16] Such a showing is required on a motion to transfer. Nor do defendants controvert plaintiff's claim that five of the prospective witnesses and two or three of the individual defendants work in New York City. Defendants' motion for a transfer is therefore denied because they fail to meet their burden of establishing substantial inconvenience.

Accordingly, defendants' motions for a stay and alternatively for a transfer are in all respects denied.

So ordered.

14. See 28 U.S.C. § 1404(a); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); Schmidt v. American Flyers Airline Corp., 260 F.Supp. 813, 815 (S.D.N.Y.1966).

15. See Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422, 424–425 (S.D. N.Y.1952).

16. Saperstone v. Kapelow, 279 F.Supp. 781, 783 (S.D.N.Y.1968); Schmidt v. American Flyers Airline Corp., supra, 260 F.Supp. at 814; Jenkins v. Wilson Freight Forwarding Co., supra, 104 F. Supp. at 424.