**ESSEX SYSTEMS COMPANY, Inc.,**
**Plaintiff,**

v.

**Abraham STEINBERG et al., Defendants.**

**No. 70–Civ. 4595.**

United States District Court,
S. D. New York.

Dec. 16, 1971.

Julien, Glaser, Blitz & Schlesinger, New York City, for plaintiff by Alfred S. Julien, New York City, of counsel.

Murray Gordon, New York City, for defendant Harte.

Nemeroff, Jelline, Danzig, Paley & Kaufman, New York City, for defendant Blue Ribbon & Reichman by Mitchell Jelline, New York City, of counsel.

## MEMORANDUM

CROAKE, District Judge.

By this action plaintiffs seek recission and damages for certain alleged violations of the Securities Exchange Act of 1934 (The 1934 Act), §§ 10(b) and 29(b), 15 U.S.C. 78(j) (b), 78(cc)(b); and Rule 10B5 of the Securities and Exchange Commission, promulgated thereunder, 17 C.F.R. 240–10b–5. They also seek, under an asserted pendent jurisdiction, similar equitable and legal relief from the same alleged acts, characterized as fraudulent and negligent misrepresentations and breaches of contract. The action also seeks an injunction of a pending consolidated action in a New Jersey state court, essentially between the same parties and concerning the same transaction. The essential facts and the present procedural posture are set out below.

On November 4 and 5, 1969, Abraham Reichman (Reichman), President and sole stockholder of Blue Ribbon Corp. (Blue Ribbon), a New Jersey corporation, agreed with the management of Essex Systems, Inc. (Essex), a New York corporation, to sell all the stock of Blue Ribbon to Essex. As part of the agreement, Essex guaranteed a five-year employment contract between Blue Rib-

bons and Reichman. The parties also agreed that upon consummation of the transaction, Richard Harte (Harte), a "finder," was to receive a stock option and employment as Vice-President of Blue Ribbon.

Essex, after paying $100,000 down on the tentative purchase price of $1,100,000, refused to attend the closing, and Reichman brought suit on April 30, 1970, in the Superior Court, Chancery Division, Bergen County, New Jersey (Docket number C–2373–69), for specific performance of the agreement.

Essex responded by initiating suit in Supreme Court, New York, against Reichman, Blue Ribbon, Harte, and Abraham Steinberg (Steinberg), a New York resident and Blue Ribbon's certified public accountant, for recission and damages for negligence and fraud. Essex alleged that an understatement of inventory had resulted in inflation of Blue Ribbon's reported net earnings for 1969 which, in turn, under the terms of the agreement, had resulted in an unjustified increase in the purchase price contracted for, by the amount of $252,000.

Within the next month after Essex's New York action was commenced, Harte sued Reichman, Essex, and Leonard Clark (Clark), President of Essex, in the state court of New Jersey (Docket number C–2543–69), for specific performance of the agreement and an injunction against any compromise of their dispute which would impair Harte's rights; for payment of his fee or the value of his services; and for damages. Reichman and Harte then sought and obtained an order from the New Jersey court consolidating their actions, allowing Blue Ribbon's intervention in both, and staying Essex from proceeding with the New York suit. Steinberg's companion motion to intervene was not acted on and therefore presumably is still pending. The petition of Essex for leave to appeal this order was denied. Subsequently, Essex and Clark counterclaimed against the plaintiffs in the consolidated New Jersey actions, and requested essentially the same relief as they had previously sought in the New York action.

The next event was the initiation of the action presently before this court, the fourth involving the same transaction, brought by Essex on October 27, 1970, against Reichman, Harte, Steinberg and Blue Ribbon. The relief requested has been described above; it is essentially the same as that sought in New York and counterclaimed for in New Jersey. The plaintiffs in the New Jersey actions, who, with the addition of Steinberg, are defendants herein, moved the New Jersey court to issue a stay of this court's proceedings; the motion was denied. They then answered, asserting the lack of personal and subject matter jurisdiction, and improper venue. The present motion is by Essex and requests a preliminary injunction staying the New Jersey proceedings pending the resolution of this action. The motion will be denied, as indicated below.

■■ A federal court may only stay a state court proceeding in the specific situations enumerated by the "anti-injunction statute," 28 U.S.C. § 2283, which states:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Of the three situations in which the statute permits an injunction to be issued, one is clearly inapplicable: there is at present no suggestion that any judgment this court might render in this case would require injunctive support for its protection. The effect of collateral estoppel or *res judicata* on this court's process of arrival at a judgment is a different matter. Recourse to this clause of the statute is premature until there are, in fact, inconsistent judgments, and even then until the second one has been appealed without success.

■ A second ground for injunctive relief is "as expressly authorized by Act

of Congress." The 1934 Act does empower the Securities and Exchange Commission to seek injunctions against persons "engaged or about to engage" in violations of the 1934 Act; 15 U.S.C. § 78u(e). And the case of Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2d Cir. 1966), does suggest that in some circumstances, private persons might succeed to the Commission's authority. However, the factual context of that case, which involved imminent violations of the Commission's proxy rules, is entirely distinguishable from the present situation, involving a completed transaction. Furthermore, the present case involves the sale of a business rather than professional trading in securities; it presents no potential or present activities of interest to the Commission. *See* Vernitron Corp. v. Benjamin, 317 F. Supp. 185, 188 (SDNY 1970).

■ A third situation in which a court may grant an injunction under the statute is "where necessary in aid of its jurisdiction." The only way in which this court's jurisdiction could be alleged to be in danger of being impaired in this case is by the preclusive effect of a prior New Jersey decision, should the New Jersey case be decided first. The theory is that, the facts to be determined in the New Jersey action being identical to those in this action, the breadth of collateral estoppel flowing from a New Jersey decision in favor of defendants herein will be such as to vitiate the federal claim, in contravention of this court's exclusive jurisdiction; 15 U.S.C. § 78aa. In support of this position, plaintiff cites the *Vernitron* case, *supra.* However, in that case, a New York Supreme Court Justice had already granted summary judgment against the federal suitor, and had specifically found certain facts essential to the federal cause of action against the federal suitor. Here, there is no evidence that the New Jersey action will be decided first, or in favor of the defendants herein. And in any event, the issue has been foreclosed by the case of Klein v. Walston & Co., Inc. (2d Cir.) 432 F.2d

936 decided on October 26, 1970, subsequent to the *Vernitron* case. In the *Klein* case, the district court had stayed the federal action grounded on the 1934 Act, pending resolution of the companion state action. A previous state action, related in some way to the federal action, had already been resolved in favor of the federal defendant, so some collateral estoppel or *res judicata* effect was a virtual certainty, not a mere possibility, as here. In those circumstances the Second Circuit stated, per curiam:

> "While because of the exclusive jurisdiction of the federal courts to enforce the Securities Exchange Act of 1934, § 27, the state court will not be able to determine certain claims asserted in the federal suit but not advanced in the state action, *it can authoritatively determine the common law claims and perhaps also defenses such as res adjudicata. . . .*"
> [Emphasis supplied.]

*See* Greater Continental Corp. v. Schechter, 304 F.Supp. 325 (S.D.N.Y.1969), aff'd as a non-final order, 422 F.2d 1100 (2d Cir. 1970) Moore Federal Practice ¶0.208[4]; *cf.* Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955). The *Klein* case mandates the conclusion that collateral estoppel of independent proof of part or even all the facts is not such a jurisdictional impairment as to allow an injunction "in aid of jurisdiction."

The description of the facts of the Klein case, above, makes evidence certain differences between that case and the present action. Two significant ones are that plaintiff herein is the defendant, not the plaintiff, in the pending state action, and that the state action herein is clearly equitable, while the nature of those in Klein is not apparent. The juxtaposition of these circumstances leads plaintiff herein to raise another ground in support of an injunction; namely, that his asserted right to trial by jury in the federal action will be infringed by the estoppel resulting from

an adverse verdict by the New Jersey chancellor.

A recent case in this District in which the plaintiffs in an 1934 Act action were defendants in a New Jersey case involving the same state statutes here is Wellington Computer Graphics, Inc. v. Modell, 315 F.Supp. 24 (D.C.1970), Mac-Mahon, J.). Defendants in that action, as those here, urged initially that the federal action is unnecessary, since the New Jersey statute involved was drafted in such a way as to give identical protection to the same rights as the 1934 Act. This contention is rejected for the reasons stated by Judge MacMahon, in 315 F.Supp. at 27. It should be noted that Judge MacMahon refused to stay the federal action, in part so as to protect the plaintiff's rights to a trial by a jury. He was not requested to stay the state action, and therefore did not direct himself to that question.

Whether or not a stay of this federal action would infringe plaintiff's asserted rights to trial by jury is academic, since the federal action will not be stayed. The only way in which plaintiff could be prejudiced is by an adverse New Jersey decree issued before the trial of this action. Should this occur, and should it be determined that plaintiff does possess a right to a jury trial, and that the right is of constitutional origin, then the purpose of the seventh amendment would best be served by limiting the collateral estoppel or *res judicata* effect of the state decree so as not to foreclose an independent determination of the claim or claims triable by jury. *See* Rachal v. Hill (5th Cir. December 3, 1970) 435 F. 2d 59. But it would be presumptive indeed for this court to attempt to balance the requirements of full faith and credit against the right to trial by jury in the absence of demonstrated necessity for doing so.

The above discussion should make evident this court's opinion that issuance of an injunction herein is barred by the provisions of 28 U.S.C. § 2283. But even were it not, a stay would be refused in the exercise of the court's discretion. One ground for refusal is that plaintiff may have little likelihood of success on the merits of the federal action. While this observation is, of course, preliminary, plaintiff's action does possess.

> "the earmarks of a retrospective excuse for kicking over a regretted deal rather than a solid case of deception." *Schechter, supra,* 304 F.Supp. at 329.

Moreover, the injunction should not be issued in any event in the absence of a showing of irreparable injury as a consequence of refusal to issue it. Plaintiff herein asserts two potential injuries: the collateral estoppel, and allegedly restrictive New Jersey discovery procedures. With regard to the collateral estoppel justification, if estoppel should eventuate, that would not be any hardship in the absence of a showing of improper trying of the facts in New Jersey, which of course is not even alleged.

With regard to plaintiff's claim that it will be prejudiced in the absence of a stay by duplicative pretrial discovery or restrictive discovery if conducted under New Jersey's rules, even if they were substantiated, they would not be sufficient prejudice. Also, they appear to be inconsistent; plaintiff (or defendants) can be harassed by federal-state duplication, or frustrated by restrictive state rules, but not both.

Defendants' application for a temporary stay of the federal deposition of the defendant Steinberg, made during the pendency of this motion, was denied for the reason that, Steinberg being a New York resident, this jurisdiction would in any event be the proper place for deposing him. All other depositions in this and the state actions were held in abeyance pending the determination of this motion. The parties should now be able to agree upon a schedule of non-duplicative discovery and the rules which will govern it. If agreement proves impossible, upon application, a suitable protective order may issue.

In conclusion, it is the opinion of this court that neither the federal nor the

New Jersey actions should be stayed. To prevent duplications, this court declines to exercise its pendent jurisdiction over the common law claims asserted both in this action and as counterclaims in New Jersey, it being understood that defendant herein will not assert counterclaims based on common law or equity.

So ordered.